**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ALBERTA OLIVER,** | * | |
| | * | |
| **Plaintiff,** | * | **Case No. 15-242** |
| | * | |
| | * | |
| **vs.** | * | |
| | * | |
| **MIDFIRST BANK, doing business as MIDLAND MORTGAGE,** | * | **JURY TRIAL REQUESTED** |
| | * | |
| | * | |
| **Defendant.** | * | |

**COMPLAINT**

**NOW COMES** Plaintiff Alberta Oliver and as her Complaint against the above-named Defendant avers as follows:

**PRELIMINARY STATEMENT**

This action arises from the Defendant acts and omissions regard the Plaintiff's home mortgage loan. At all relevant times, Defendant was the owner of the loan and serviced the loan through its servicing division under the name Midland Mortgage. Specifically, Defendant has misapplied Plaintiff's mortgage payments, falsely demanded sums not owed, wrongfully instituted foreclosure and violated the bankruptcy stay. Defendant also has failed to comply with federal law by failing to investigate and correct its servicing errors and failing to provide certain requested information. Defendant's failure to properly apply payments received is a breach of the loan documents and also a violation of federal law. Plaintiff seeks damages and attorneys fees for multiple violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA"), the Fair Debt Collection Practices Act, 15 U.S.C. 1692 ("FDCPA"), the Truth in

Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA") and the Bankruptcy Code. Plaintiff also seeks damages for breach of the mortgage and note and various other common law claims.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 15 U.S.C. § 1640, 15 U.S.C. 1692k and 12 U.S.C. § 2617.

2. Venue is proper here because the events giving rise to Plaintiff's cause of action occurred in this district.

## THE PARTIES

3. Plaintiff is an adult resident of Mobile County, Alabama.

4. Defendant, Midfirst Bank ("Midfirst") is a corporation formed under the laws of the State of Oklahoma. It serviced Plaintiff's loan through its servicing division and under the name Midland Mortgage. Unless otherwise indicated, Defendant, including its servicing division, will be referred to herein as "Midland."

## FACTUAL ALLEGATIONS

5. On June 9, 2008 James and Alberta Oliver entered into a mortgage loan agreement with CitiMortgage, Inc. in the amount of $85,260.00. The annual percentage rate for the loan was 6.625% and the term was 30 years. The monthly principal interest payments are $545.93. The loan is secured by a mortgage on Mrs. Oliver's home located at 359 Breamwood Avenue, Mobile, Alabama. This has been Mrs. Oliver's home since 1996. James Oliver died in September 2012.

6. The loan was initially serviced by CitiMortgage. Sometime in 2012, the loan was transferred to MidFirst Bank. Upon transfer to MidFirst, the mortgage was serviced by Midland

Mortgage, a division of MidFirst. At the time the loan was transferred to MidFirst, MidFirst considered the loan in default.

7. On July 10, 2012, Midland sent a written notice of default to James Oliver, falsely stating that the loan was in default and that no payments were made since May 1, 2012. In fact, timely payments were made in May, June and July 2012.

8. On August 9, 2012, Midland wrote another letter to Plaintiff stating that no payments were made for June and July 2012. This was false.

9. On August 5, 2012, Ms. Oliver wrote to Midland requesting a payment history.

10. Midland refused to provide that information. On August 14, 2012, Midland wrote Ms. Oliver explaining that the payment history she requested could not be provided because she was not party to the loan. This was false and Midland's refusal to communicate or to provide information relating to the mortgage was wrongful. She, at all times, was a party to the mortgage and her property interests have been directly impacted by the actions of Midland. Under the terms of the mortgage, she is a "borrower" and entitled to receive information regarding the mortgage loan.

11. Mrs. Oliver continued to send in her payments and those payments were accepted by Midland.

12. Mr. Oliver passed away in September 2012. Shortly thereafter, Mrs. Oliver notified Midland of her husband's death.

13. On February 13, 2013, Midland wrote another letter, addressed to the "Estate of James E. Oliver Jr.", stating that the loan was in default for failure to make payments. Again, this was false as every payment identified had been made on time. The letter specifically stated that the August 1, 2012 payment and all subsequent payments had not been made.

14. The next day Midland wrote another letter to Plaintiff, this time addressed to Alberta Oliver, stating that the loan was in default and that the total arrearage due is $4,226.49 was immediately due. Midland stated that if that amount was not paid in lump sum within 35 days of the notice, the lender will accelerate the loan balance and ***"proceed with foreclosure without further notice to you. In such case your property will be sold at foreclosure and you will be required to vacate the premises."***

15. Each time she received these letters, Mrs. Oliver was struck with fear of losing her home, despite her payments to Midland. She became convinced that Midland was determined to take her home no matter how many payments she made.

16. On March 19, 2013, Plaintiff sent written notification to Midland stating her belief that her payments were not being properly applied and that it was falsely holding her in default of the mortgage.

17. The letter stated that "[w]e have timely made our loan payments but your statements consistently show an arrearage. According to your letters, you claim an arrears amount of $4,226.49. I do not believe this is correct. I want to keep my house and will pay any legitimately owed delinquency to get the loan out of default, but I will not pay what is not owed. If you investigate the payment activity on your mortgage, you will realize that your arrearage claim is false." Also, Ms. Oliver requested specific documents and information, including a complete payment and transaction history for the loan, a statement of each month during which Midland claims no payments were made, the date Midland contends the loan first came in default and a description of how each payment received by Midland was applied.

18. Midland failed to provide any response to Mrs. Oliver's March 19th letter.

19. On June 4, 2013, Midland wrote Plaintiff a letter notifying her that her loan had been referred to her lawyer to begin foreclosure.

20. On July 3, 2013, the Law Firm of Sirote & Permutt, P.C., ("Sirote") the foreclosure firm hired by MidFirst, sent written notification to Mrs. Oliver that her loan was being accelerated and the full balance of the loan in the amount of $84,202.85 was immediately due. The letter further stated that MidFirst would conduct a foreclosure sale on September 6, 2013. Attached to the letter was a copy of the notice of that foreclosure sale which was published in the Call News on July 10, 17 and 24, 2013. The Call News is a newspaper circulated primarily in Citronelle, some 34 miles from Mobile. Sirote sent a separate letter, also dated July 3rd, stating that within 60 to 90 days title to Mrs. Oliver's home will be transferred to MidFirst.

21. In order to protect her home from foreclosure, Ms. Oliver filed a Chapter 13 bankruptcy on August 30, 2013. MidFirst filed a proof of claim in the bankruptcy falsely stating that no payments had been made between November 1, 2012 and August 30, 2013 and that a total arrearage amount was owed in the amount of $8,031.73. This amount included nearly $2,000.00 in various fees, expenses and other charges that were wrongfully charged to the loan because the loan was in fact not in default.

22. Mrs. Oliver's bankruptcy was dismissed on August 1, 2014.

23. While her bankruptcy was pending, Mrs. Oliver continued to make loan payments to Midland. However, MidFirst continued to falsely hold Mrs. Oliver in default of the loan.

24. In December 2014, Midland returned Mrs. Oliver's mortgage payment. Then, she received another notice from Sirote stating that her loan was being accelerated and demanding payment of $86,888.72. The letter, dated December 11th, stated that a foreclosure sale would take

place on February 9, 2015. The letter attached a foreclosure notice that was published in The Call News on December 17th, 24th and 31st.

25. On December 22nd, Midland sent another letter to Mrs. Oliver stating that she had not made payments since June 2014. This was false. The letter demanded lump sum payment of $9,852.01 and stated that failure to pay this amount would result in the loss of her home.

26. On January 14, 2015, Mrs. Oliver sent another QWR and NOE to MidFirst and Midland. The letter restated her belief that Midland has failed to recognize payments made and, that the December 2014 payment was wrongfully rejected and that Midland had no right to foreclose. The letter also requested information and documents related to the servicing of the loan. Here is the text of letter:

**QUALIFIED WRITTEN REQUEST AND NOTICE OF SERVICING ERROR**

**Re: Loan Number: 54938388**
**Borrower's Name: James and Alberta Oliver, Jr.**
**Property Address: 359 Breamwood Drive, Mobile, Alabama 36604**

Dear Sir or Madam:

I believe you are not properly applying my payments and are claiming that I owe money that I've already paid you. You have sent me letters stating that I have not made a payment over a year and you claim that I owe over $10,000 in past due mortgage payments. You have returned the payment I made to you in December 2014 and you are threatening to foreclose on my home. I have made my mortgage payments and you should have record of that. I want to keep my home and will pay any legitimately owed delinquency to get the loan out of default, but I will not pay what is not owed and I do not believe you have a right to foreclose. If you investigate the payment activity on our mortgage, you will realize that you are trying to collect money you've already been paid. .

The mortgage is in my name, along with my husband James. He passed away September 2012 and I have previously provided to you a copy of the Death Certificate.

Please investigate this matter and make all appropriate corrections. Also, please provide the following information:

1. A complete payment and transaction history for this loan starting from the beginning of the loan to present;

2. List of each month that during which you do not believe we failed to make a timely mortgage payment.

3. The date that you contend that we first defaulted on the terms of our loan.

4. State the date on which you became the servicer of our loan.

5. Status of any foreclosure proceeding regarding my home.

6. The total amount, separately listed and identified for any unpaid principal, interest, and other charges due and owing as of today's date.

7. A description of how each payment received by you was applied or credited (indicating the portion, if any, applied or credited to principal, interest, escrow, suspense or other treatment) and the month to which the payment was applied. In your description, identify all amounts held in suspense and explain why the suspended funds have not been applied.

8. Identification of the current holder of the mortgage, if you contend you do not hold the mortgage, and the date on which that holder acquired the mortgage. Please regard this as a written request pursuant to 15 U.S.C. 1641(f)(2).

Sincerely,

Alberta Oliver

27. Midland responded to the QWR/NOE by letter dated January 30, 2015. Midland's response failed to address any of the errors described in Mrs. Oliver's letter. The letter did not include any explanation of whether or why Defendant believed it properly serviced the loan. Nor

did Midland explain the basis for its belief that Plaintiff failed to timely make payments. The letter merely provided basic and generic information regarding the loan which was not responsive to the very specific issues outlined in Mr. Oliver's letter. Moreover, the letter did not provide any information regarding the basis for Midland's belief that no error had occurred. The text of the response, in its entirety, is as follows:

> We acknowledge receipt of your recent inquiry concerning the loan referenced below serviced by MidFirst Bank through its division Midland Mortgage. We welcome the opportunity to be of service.
>
> We are providing relevant contact information regarding the ownership of the below-referenced loan. The owner/assignee of the loan is MidFirst Bank, whose mailing address is MidFirst Bank, 999 NW Grand Blvd., Oklahoma City, OK 73118. The owner status of this loan is based upon our records as of the date of this letter. Please note that loan ownership status may change from time to time. If your request included additional questions, those items will be addressed separately from this response.
>
> MidFirst Bank through its division Midland services the loan. We handle all servicing aspects of the loan, and therefore all communications concerning the loan should be directed through us. If we can be of further service, please call our Customer Service Department at 1-800-654-4566, Monday through Friday, 8:00 a.m. to 5:00 p.m. (Central Time).

28. Since its January 30th response, Midland has continued to falsely claim that Mrs. Oliver missed payments, has continued to attempt to collect sums not owed and continued its attempt to take her home through foreclosure.

29. On February 9, 2015, Sirote informed Plaintiff by letter that the foreclosure sale scheduled for February 9th was postponed to March 12th.

30. For the sole purpose of preventing Midland for foreclosing on her home, Plaintiff was forced to file another Chapter bankruptcy. That bankruptcy action was filed March 10, 2015 and Midland received notice of that filing.

31. Despite the bankruptcy filing, Midland has continued to attempt to collect money not owed. On April 21st, Midland returned Mrs. Oliver's April payment. Also, Midland has continued to make collection calls to Mrs. Oliver, including a call made on May 5, 2015.

32. Mrs. Oliver's August 5, 2012, March 19, 2013 and January 14, 2015 letters each constitute a "qualified written request" (QWR) and a "notice of servicing error" pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) and its implementing regulations. The letters were mailed by certified U.S. mail to the address designated by Midland for receipt of RESPA. information requests and notices of servicing errors. Each letter addressed issues or requested information relating to the servicing of the mortgage.

33. Midland failed to conduct any reasonable investigation and failed to take reasonable measures to correct the errors identified in Mrs. Oliver's letters.

34. Since receipt of Plaintiff's QWR/NOEs, Defendant has reported false and derogatory information to consumer reporting agencies regarding the status of Mrs. Oliver's loan.

35. Defendant engages in a pattern and practice of improperly responding to notices and requests from borrowers provided pursuant to RESPA Section 2605. Part of this practice is to use the standardized form-based response letters, like the one used to respond to Mr. Oliver's request, which contain boilerplate statements and generic information that is non-responsive the borrowers' specific requests. Defendant has also engaged in a pattern and practice of failing to conduct any reasonable investigation of the error included in the borrower's notice, and continuing to report false information to credit bureaus after receipt of a Notice of Error.

**COUNT I**
**(BREACH OF MORTGAGE AND NOTE)**

36. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

37. The acts and omissions made by Defendant, as alleged herein, constitute a breach of the mortgage agreement and note. These acts and omissions include, but are not limited to, the failure to apply payments tendered by Plaintiff in accordance with the promissory note and mortgage, the failure to provide accurate notices required under the mortgage and the institution of foreclosure proceedings had on alleged arrearages that were not owed. In addition to violating the express provisions of the mortgage, Defendant violated the implied duty of good faith and fair dealing.

38. Plaintiff has suffered damage as a proximate result of the said breach.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendant for breach of the mortgage and note, and award him compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

**COUNT II**
**(VIOLATIONS OF RESPA)**

39. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

40. Section 6(d) of the Real Estate Settlement Procedures Act ("RESPA."), 12 U.S.C. § 2605(e), grants borrowers the right to submit a "qualified written request" ("QWR") to the loan servicer requesting information and documents pertaining to the servicing of her loan. That provision and its implementing regulations also grant borrowers the right to submit a "notice of

servicing error" ("NOE"), identifying perceived errors committed by the servicer. 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35.

41. A QWR and NOE must sufficiently identify the borrower, the account and the perceived servicing error. Id.

42. RESPA requires specific actions be taken by the servicer upon receipt of an NOE. The servicer must acknowledge receipt of the NOE within 5 business days. 12 U.S.C. § 2605(e)(1). Within thirty (30) days the servicer must take the following action:

> -Make "appropriate corrections in the account of the borrower," and provide the borrower a written notification of such correction;
>
> -If, after conducting an investigation, the servicer determines that no error occurred, provide the borrower with a written explanation stating the reasons for which the servicer's determination and contact information of the individual or office that can provide assistance;
>
> -If, after conducting an investigation, the servicer determines that the information requested is not available, provide a written explanation of the reasons for that determination and contact information of the individual or office that can provide assistance;

12 U.S.C. § 2605(e)(2)(A)-(C).

43. Recognizing the prevalence of servicing errors and the damage they can cause American families if not corrected, the federal Consumer Finance Protection Bureau in 2013 promulgated amendment to the RESPA implementing regulations (Reg. X.), which clarified the servicer's obligation to respond to a NOE. 12 C.F.R. § 1024.35. These new regulations became effective January 10, 2014.

44. The 2013 Amendments to Reg. X. clarify that the servicer has two options in responding to an NOE. The servicer must either (A) correct the error identified by the borrower, or (B) after "[c]onducting a reasonable investigation" provide "the borrower with a written notification

that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance." 12 C.F.R. § 1024.35(e)(A)&(B).

45. In addition to these requirements, the 2010 amendments to RESPA added additional "servicer prohibitions." 12 U.S.C. § 2605(k). Under these prohibitions, a servicer may not:

> -Fail to take timely action to respond to a borrower's notice of servicing error relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties. 12 U.S.C. § 2605(k)(C);
>
> -Fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter.

12 U.S.C.A. § 2605(k)

46. Plaintiff's mortgage is a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602(1).

47. Defendant is a "servicer" with respect to Plaintiff's loan as that term is defined in 12 U.S.C. § 2605(i)(2).

48. Plaintiff's August 5, 2012 letter constitutes a "qualified written request" ("QWR") within the meaning of 12 U.S.C. § 2605(e). The letter reasonably requested information and documents relating to the servicing of the mortgage and Midland was obligated to provide the requested information and documents. Midland failed to do so in violation of 12 U.S.C. § 2605(e).

49. Plaintiff's March 19, 2013 and January 14, 2015 letters each constitute a "qualified written request" ("QWR") and a "notice of servicing error" ("NOE") within the meaning of 12

U.S.C. § 2605(e). Midland was required to reasonably investigate the errors identified in the letter, make all appropriate corrections and provide the information and documents requested. The January 14, 2015 letter and Midland's obligation to respond to that letter are governed by 12 C.F.R. § 1024.35.

50. Midland failed to provide any response to Plaintiff's March 19, 2013 letter and thereby violated 12 U.S.C. § 2605(e). Midland also failed to correct the errors identified in that letter and continued to report derogatory information to credit bureaus in further violation of 12 U.S.C. § 2605(e).

51. Midland's response to Plaintiff's January 14, 2015 letter response failed to comply with the requirements of 12 U.S.C. § 2605(e), as clarified by 12 C.F.R. § 1024.35. Specifically, Midland failed to failed to conduct any reasonable investigation of the errors described in Plaintiff's NOE and failed to make appropriate corrections to the account. It failed to provide any detailed explanation of the basis for its belief that no error occurred. Also, Defendant continued to report false and derogatory information to consumer reporting agencies after receipt of the notice of error. This is a violation of Section 2605(e) and its implementing regulations.

52. Defendant has also violated 12 U.S.C. § 2605(k) by failing to correct the errors identified in the Plaintiffs' NOE and by failing to comply with the requirements set out in Reg. X regarding responding to a QWR and a NOE.

53. Plaintiff has suffered actual damages as a proximate result of Defendant's failure to comply with Section 2605(e), including mental anguish and emotional distress. Plaintiff's actual damages also include fees, interest and other charges incurred as a result of Defendant's false belief that Plaintiff is in default; loss of equity as a result of Defendant's failure to properly apply

payments; and costs incurred in sending the NOE which, because of Defendant's failure to correct its servicing error, were for naught.

54. Defendant has engaged in a pattern and practice of acts and omissions which violate Section 2605(e), including its repeated violations with respect to Plaintiff, sufficient to allow recovery of statutory damages under Section 2605(f).

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against Defendant for each violation of RESPA, awarding the following relief:

A. Statutory and actual damages as provided in 12 U.S.C. § 2605(f);

B. Reasonable attorney's fees, and costs expended in this proceeding; and

C. Such other and further relief as the Court may deem just and proper.

**COUNT III**
**(FDCPA VIOLATIONS)**

55. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

56. This is a claim against Defendant for multiple violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 ("FDCPA").

57. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6). Midland has attempted to collect a debt which is owed to another and/or it obtained the debt and servicing rights after default.

58. The alleged debt which attempted to collect from Plaintiff is a "debt" as defined by the FDCPA, 15 U.S.C. § 1692a(5).

59. Defendant has violated the FDCPA in connection with its collection attempts against Plaintiff. Defendant's violations include, but are not limited to, the following:

A. Attempting to collect amounts which are not authorized by any contract or permitted by law. This is a violation of 15 U.S.C. § 1692f(1);

B. Attempting to collect a debt by use of false, deceptive and/or misleading statements aimed at coercing the Plaintiff to pay the debt in violation of 15 U.S.C. § 1692e;

C. Communicating to any person, including credit bureaus, credit information which is known or which should be known to be false in violation of 15 U.S.C. § 1692e(8); and

D. Taking or threatening to take nonjudicial foreclosure action in the absence of a legal right to do so in violation of 15 U.S.C.A. § 1692f(6).

60. The actions taken by Defendant in violation of the FDCPA occurred within one year of the filing prior to this action.

61. As a proximate result of Defendant's FDCPA violations, Plaintiff has suffered actual damages.

62. As a result of its violations of the FDCPA, Defendant is liable to Plaintiff for compensatory damages, statutory damages, costs and attorneys fee.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against Defendant for the following:

A. Actual damages;

B. Statutory damages pursuant to 15 U.S.C. 1692k;

C. Costs and reasonable attorneys fees pursuant to 15 U.S.C. § 1692k;

D. Such other and further relief as this Court deems just and proper, the premises considered.

**COUNT IV**
**(VIOLATION OF THE BANKRUPTCY STAY)**

63. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

64. This count asserts a claim under the Section 362(k) of the Bankruptcy Code. 11 U.S.C. § 362(k)(1).

65. Midland has engaged in collection activity after Plaintiff's bankruptcy was filed. These actions include collection calls, collection letters and the return of Plaintiff's mortgage payments. These action violate the automatic bankruptcy stay.

66. At the time it took these actions, Midland knew or should have known that there was a bankruptcy stay in place and that its actions violated the stay. Said stay violations were committed willfully.

67. Plaintiff has suffered damages as a result of Defendant's stay violation.

**WHEREFORE,** Plaintiff requests that this Court enter judgment against Defendants for its violations of the bankruptcy stay and award Plaintiff compensatory damages, punitive damages, attorneys fees and costs as provided pursuant to Bankruptcy Code Section 362(k)(1). Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

**COUNT IV**
**(VIOLATION OF THE TRUTH IN LENDING ACT)**

68. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

69. This count asserts a claim under the Truth in Lending Act ,15 U.S.C. § 1600 - 1666 ("TILA")

70. Defendant, as creditor, was required by 15 U.S.C. § 1639f to promptly and accurately credit the Plaintiff's account with the payments received. It has failed to do so.

71. Plaintiff has suffered damages as a result of Defendant's TILA violation.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendant for its violations of TILA and award Plaintiff statutory damages, compensatory damages, attorneys fees and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

**<u>COUNT V</u>**
**(WANTONNESS)**

72. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

73. The acts and omissions alleged herein by Defendant constitute wantonness and were made with a wanton, reckless or conscious disregard for the Plaintiff's rights and welfare.

74. Defendant has also wantonly hired, trained and supervised its employees and agents.

75. The acts and omissions taken by Defendant were made on Defendant's behalf as agent and Defendant is liable for Defendant's tortuous acts and omissions.

76. Plaintiff has suffered damage as a proximate result of the said wantonness.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendant for wantonness and award Plaintiff compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

**COUNT VI**
**(NEGLIGENCE)**

77. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

78. The acts and omissions alleged herein by Defendant constitute negligence.

79. Defendant also negligently hired, trained and supervised its employees.

80. The acts and omissions taken by Defendant were made on Defendant's behalf as agent and Defendant is liable for Defendant tortuous acts and omissions.

81. Plaintiff has suffered damage as a proximate result of the said negligence.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendant's negligence and award Plaintiff compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

**TRIAL BY JURY IS HEREBY REQUESTED AS TO ALL CLAIMS AND DEFENSES ASSERTED HEREIN**

KENNETH J. RIEMER (RIEMK8712)
Underwood & Riemer, P.C.
Attorney for Plaintiff
166 Government Street, Suite 100
Mobile, Alabama 36602
251.432.9212
kjr@alaconsumerlaw.com

**DEFENDANT TO BE SERVED BY CERTIFIED MAIL AT THE FOLLOWING ADDRESS:**

**MIDFIRST BANK**
David D Morgan
Legal Dept
501 NW Grand Blvd.
Oklahoma City, OK 73118